# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 15-395V
Filed: December 15, 2016
UNPUBLISHED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ROBERT HORNER, | * |
| | * |
| Petitioner, | * |
| v. | * |
| | *   Attorneys' Fees and Costs; |
| SECRETARY OF HEALTH | *   Special Processing Unit ("SPU") |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Isaiah Richard Kalinowski*, Maglio Christopher & Toale, PA, Washington, DC, for petitioner.
*Claudia Barnes Gangi*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

On April 20, 2015, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleged that he suffered Guillain-Barre Syndrome ("GBS") caused by his September 24, 2013 influenza vaccination. On March 21, 2016, the undersigned issued a decision awarding compensation to petitioner based on the parties' stipulation. (ECF No. 27).

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On August 26, 2016, petitioner filed a motion for attorneys' fees and costs. (ECF No. 31-33). Petitioner requests total attorneys' fees and costs amounting to $70,429.30,[3] which includes $16,490.10 in fees and $455.46 in costs to counsel of record, Isaiah Kalinowski of Maglio Christopher & Toale (hereinafter "Maglio firm"), and $44,039.75 in fees and $9,443.99 in costs to local co-counsel, Ronald Segel, of Albuquerque, New Mexico, divided between two firms. *Id.* at 1-2. Mr. Segel's fees and costs are divided as follows: $17,189.28 in fees and $1,542.56 in costs incurred at the firm of Sutin, Thayer & Browne (hereinafter "Sutin firm"), and $26,850.47 in fees and $7,901.43 in costs at the firm of Will Ferguson & Associates (hereinafter "Ferguson firm").[4] *Id.* at 2. In compliance with General Order #9, petitioner filed a signed statement indicating petitioner incurred no out-of-pocket expenses. Respondent filed no response.

The undersigned has reviewed the billing records submitted with petitioner's request. In the undersigned's experience, the request appears excessive for the reasons described below, and the undersigned awards total attorneys' fees and costs in the amount of $54,965.02 divided as follows:

- $12,821.26 (reduced from $16,945.56) for fees and costs incurred by Maglio Christopher & Toale; and

- $13,683.77 (reduced from $18,731.84) for fees and costs incurred by Sutin, Thayer & Browne; and

- $28,459.99 (reduced from $34,751.90) for fees and costs incurred by Will Ferguson & Associates.

I. **The Special Master's Authority to Determine the Amount of Fees and Costs:**

Since the petition for compensation was successful, the undersigned will award *reasonable* attorneys' fees and costs to petitioner. § 15(e)(1). Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach, which begins with an assessment of a reasonable hourly rate multiplied by a reasonable number of hours expended in the case. *Avera v. HHS*, 515 F.3d 1343,1347-48 (Fed. Cir. 2008.)

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g. Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir.

---

[3] This total and the underlying figures cited herein are based on the undersigned's calculations following review of the billing records. The undersigned found that the totals cited in petitioner's application (ECF No. 31) included minor math errors, resulting in slightly different figures than those cited here.

[4] Mr. Segel explained that he left the Sutin firm and began working at the Ferguson firm in September of 2014. (ECF No. 33-4, pp. 1-2.)

1993).  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. HHS*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, Special Masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. HHS*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Wasson,* 24 Cl.Ct. at 484. Notwithstanding respondent's failure to respond to petitioner's fee application, "the Special Master has an independent responsibility to satisfy [herself] that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. HHS*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008).

## II.     Determining Counsel's Hourly Rates

The appropriate hourly rate for counsel in Vaccine Act litigation is the forum rate, unless the "*Davis* exception" applies. *Avera,* 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA,* 169 F.3d 755 (D.C.Cir.1999)); *see also Rodriguez v. HHS,* 632 F.3d 1381, 1384 (Fed. Cir. 2011) (affirming a determination of the forum rate in Vaccine Act cases). The *Davis* exception applies when the bulk of the work in a case is performed outside the forum (Washington, DC, in Vaccine Act cases), and there is a very significant difference between local and forum rates. *Avera,* 515 F.3d at 1349.

Whether looking at the local or forum rate, the undersigned must award "rates that are compatible with the prevailing market rate." *Rupert v. HHS*, 52 Fed. Cl. 684, 688 (2002); *Avera*, 515 F.3d at 1349.  The prevailing rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera,* 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 896, fn. 11 (1984).)  In addition to the evidence in the record, a special master may use her experience in the Vaccine Program to determine an hourly rate. *Id.* at 1357; *Saxton,* 3 F.3d at 1521.

In the instant application, Mr. Kalinowki seeks an hourly rate of $361 for work performed from 2013 through 2015, but reduced his hourly rate to $349 for work performed in 2016. (ECF No. 32-2.)  The undersigned recently issued a reasoned decision in *McGrath v. HHS*, No. 15-275V (Fed. Cl. Spec. Mstr. Oct. 27, 2016), finding that appropriate hourly rates for Mr. Kalinowski are $325 per hour for 2014-15[5] and $349 per hour for 2016.  The undersigned adopts the reasoning and rates in the *McGrath* decision for the instant analysis. By the undersigned's tabulation, Mr.

---

[5] Although *McGrath* did not specifically address Mr. Kalinowski's rates for 2013, it did cite approvingly to *O'Neil v. HHS*, No. 08-243, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015), which awarded the same $325 rate for work performed in 2012 and 2013.

3

Kalinowski billed 28.5 hours at an hourly rate of $361, thus the undersigned's determination of his appropriate hourly rate results in a reduction of $1,026.00.

      Mr. Segel requests an hourly rate of $340 for work performed in 2013 and $375 for work performed in 2014 through 2016. (ECF No. 33-1, 33-2.) Mr. Segel avers that these are his standard hourly rates for his practice in Albuquerque, New Mexico. (ECF No. 33-4.) Admitted to the bar in 1972, Mr. Segel has practiced tort litigation, including medical negligence cases, for over 40 years. (ECF No. 33-4, p. 1.) However, he acknowledged that the instant case was his first vaccine case and that he felt it necessary to engage more experienced counsel as co-counsel. (*Id.* at 2.) In support of his requested rates, Mr. Segel submitted a local district court decision from 2011 wherein he was awarded fees at an hourly rate of $325 per hour (ECF No. 33-9), a 2015 local district court decision in which another attorney was awarded an hourly rate of $469.87 (ECF No. 33-8), an affidavit from the chief executive officer of the Sutin firm confirming Mr. Segel's hourly rate at the firm and asserting that the rate is "fair, reasonable, and customary in this community" (ECF No. 33-5) and an affidavit by an attorney practicing at a different firm in the same community, averring that Mr. Segel's requested rates are customary for similarly experienced attorneys in Mr. Segel's legal community (ECF No. 33-6).

      Since Mr. Segel has not requested forum rates, the undersigned need not reach the question of whether local rates in Albuquerque, New Mexico, are significantly lower than forum rates. Moreover, the undersigned is satisfied that Mr. Segel has substantiated his assertion that the requested rates are consistent with those charged locally by similarly experienced counsel. However, in light of Mr. Segel's lack of vaccine experience, his accompanying lack of efficiency, and his engagement of more experienced vaccine counsel to help him resolve this claim, the undersigned finds that a more appropriate rate increase for Mr. Segel's 2014-2016 work in this case results in an hourly rate of $350 per hour for those years. [6] *See, e.g. Avera*, 515 F.3d at 1347-48 (noting that the lodestar analysis allows the fact finder to make upward or downward adjustments based on specific findings.) According to his billing records, Mr. Segel billed 32.70 hours at a rate of $375 while working at the Sutin firm. Applying a rate of $350 to this time results in a reduction in Mr. Segel's fee of $817.50. Mr. Segel also billed 66.8 hours of time at a rate of $375 while at the Ferguson firm. Applying a rate of $350 to this time results in a reduction of $1,670.00.

---

[6] Mr. Segel ceded responsibility for significant aspects of this case to Mr. Kalinowski, including the drafting of all pleadings and all contact with the court and respondent's counsel (ECF No. 32-4, p. 5). Moreover, despite Mr. Kalinowski's involvement, Mr. Segel still billed in excess of 100 hours of attorney time on this case despite his purported exercise in billing judgment. In the undersigned's experience reviewing fee applications in similarly expedited cases, this suggests excessive and inefficient use of time. *See, e.g. J.B. v. HHS*, 15-67V, 2016 WL 4046871, at *6-8 (Fed. Cl. Spec. Mstr. July 8, 2016)(describing the streamlined nature of SPU and awarding reduced fees in that context). Particularly given Mr. Kalinowski's involvement in this case, the undersigned finds that neither Mr. Segel's designated role in prosecuting this case, nor his actual performance, warrants compensation fully consistent with his level of general legal experience.

### III.  Determining the Appropriate Number of Hours in this Case

As noted above, the undersigned finds that the overall amount of fees billed in this case is excessive.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  Upon the undersigned's review, this is chiefly due to the co-counsel arrangement pursued by the attorneys in this case.

Although co-counsel relationships are not *per se* unreasonable, excessive billing due to work by multiple attorneys is disfavored and has resulted in fee reductions.  *See, e.g. Lord v. HHS*, No. 12-255V, 2016 WL 3960445 (Fed. Cl. Spec. Mstr. June 30, 2016).  The reasonableness of a referring attorney or co-counsel's fee is subject to the same standard that governs the counsel of record.  *Id*. at *3; *See also Farr v. HHS*, No. 90-1167V, 1992 WL 33602, at *3 (Fed. Cl. Spec. Mstr. Nov. 2, 1992); *Haley v. HHS*, No. 90-3842, 1992 WL 368003, at *4 (Fed. Cl. Spec. Mstr. Nov. 20, 1992).

Upon review of Mr. Kalinowski's billing records, the undersigned tabulates a total of 19 hours of attorney time spent conferring with Mr. Segel, reviewing his work, educating him, or otherwise coordinating efforts.  (ECF No. 32-2.)  This breaks down as follows:  1.4 hours during 2013; 3.8 hours during 2014, 12.9 hours during 2015, and .9 hours during 2016.  Conversely, upon review of Mr. Segel's billing records, the undersigned finds that Mr. Segel spent 32 hours coordinating or conferring with or otherwise seeking guidance from Mr. Kalinowski.[7]  (ECF No. 33-1, 33-2.)  This breaks down as follows:  4.3 hours during 2013; 9.9 hours at the Sutin firm and 1.8 hours at the Will firm during 2014; and 16 hours during 2015.  The undersigned finds these charges excessive and redundant and reduces them by half.

Additionally, the undersigned further reduces Mr. Segel's billing from the Sutin firm by 2 hours during 2013 and 1.4 hours during 2014, for time spent researching regarding the Vaccine Program and the causal association between the influenza vaccine and GBS. (ECF No. 33-2.)  It is well established that attorneys may not be compensated for professional development concerning the Vaccine Program.  *See, e.g. Lord*, 2016 WL 3960445 at *4.  Moreover, such research was rendered redundant by Mr. Segel's co-counsel relationship with more experienced Vaccine counsel.

---

[7] Mr. Segel engaged in some block billing.  That is, he included multiple different tasks in a single billing entry.  This is disfavored and has resulted in reductions in fees in prior cases, because it prevents line-by-line analysis.  *See, e.g. J.B.,* 2016 WL 4046871 at *8.  In this case, the tabulation of Mr. Segel's hours may include some tasks which otherwise may not have been reduced, but which were incorrectly included in billing entries which also included significant contact between co-counsel.

Finally, to the extent that the undersigned has found, for reasons described below, that the retention of Deborah Witkin, R.N., as a consultant was excessive, the undersigned further finds that the 3.1 hours that the Ferguson firm has billed for Mr. Segel's time coordinating with her during September and October of 2014, are likewise excessive.[8]

Thus, the undersigned reduces the hours billed by Mr. Kalinowski in this case as follows:

| Year(s) | Hourly Rate: | Hours Reduced: | Amount Deducted: |
|---|---|---|---|
| 2013-15 | $325 | 9.05 hours | $2,941.25 |
| 2016 | $349 | .45 hours | $157.05 |
| | | **Total** | **$3,098.30** |

Additionally, the undersigned reduces the hours billed by Mr. Segel on behalf of the Sutin firm as follows:

| Year(s) | Hourly Rate: | Hours Reduced: | Amount Deducted: |
|---|---|---|---|
| 2013 | $340 | 4.15 hours | $1,411.00 |
| 2014 | $350 | 6.35 hours | $2,222.50 |
| | | **Total** | **$3,633.50** |

Finally, the undersigned reduces the hours billed by Mr. Segel on behalf of the Ferguson firm as follows:

| Year(s) | Hourly Rate: | Reduction: | Amount Deducted: |
|---|---|---|---|
| 2014-15 | $350 | 12 hours | **$4,200.00** |

---

[8] This is distinct from the over five hours that Mr. Segal spent in February and March of 2015 reviewing and revising Ms. Witkin's resulting medical summary.

## IV. Costs

Upon review of the billing submissions, the undersigned has found no cause to reduce the costs requested by the Maglio firm. However, reductions must be made to the costs requested by Mr. Segel on behalf of both the Sutin and Ferguson firms.[9]

Mr. Segel has sought reimbursement of $277.00 for costs to the Sutin firm associated with his admission to the bar of the U.S Court of Federal Claims (inclusive of both the bar admission fee and certificate of good standing necessary for application). Such expenses are not recoverable. *See, e.g. Velting v. HHS*, No. 90-1432, 1996 WL 937626, at *1-2 (Fed. Cl. Spec. Mstr. Sept. 24, 1996).

Additionally, in light of the reductions of Mr. Segel's billing in this case, the undersigned likewise reduces his request for reimbursement of the New Mexico Gross Receipts Tax ("NMGRT"). Using the tax rate of 7.1875% reflected in the tax schedule submitted with petitioner's application, the undersigned finds that the NMGRT for the Sutin firm should be reduced from $1,152.78 to $832.71, based on total fees amounting to $11,585.50. For the Ferguson firm, the NMGRT is reduced from $1,800.47 to $1,378.56, based on total fees amounting to $19,180.

## V. Conclusion

Based on all of the above, the undersigned finds that petitioner's counsel is entitled to reasonable attorneys' fees in the total amount of $54,965.02 as follows:

<u>Maglio Christopher & Toale, PA</u>:

| | |
|---|---|
| Original Request for Fees: | $16,490.10 |
| Rate Reduction Above: | -$1,026.00 |
| Hour Reduction Above: | <u>-$3,098.30</u> |

---

[9] In addition to the costs discussed below, the undersigned notes that Mr. Segal sought reimbursement on behalf of the Ferguson firm for $3,644.80 for the services of Deborah Witkin, R.N. (ECF No. 33-2, p. 7.) Ms. Witkin billed 32 hours of time to "review, organize, and preliminarily evaluate [the] pertinence of approximately 2,600 pages of [the] patient's medical records" and "synthesize pertinent medical records and prepare [a] medical chronology." (ECF No. 33-2, p. 11.) However, prior to joining the Ferguson firm, Mr. Segel spent considerable time reviewing petitioner's medical records while at the Sutin firm. He also spent considerable time reviewing Ms. Witkin's work. Moreover, Mr. Kalinowski and Maglio paralegals also billed time reviewing medical records and coordinating the medical records summary. In light of this, Ms. Witkin's involvement was redundant and excessive. Nonetheless, since Ms. Witkin did produce a work-product from which the attorneys worked, the undersigned will not disallow reimbursement in this instance. Instead, as noted above, the undersigned has reduced as excessive Mr. Segel's billing for his time spent engaging and coordinating with Ms. Witkin. Mr. Segel is cautioned that such expert expenses may not be allowed in the future. Attorneys' costs are subject to the same reasonableness standard as attorneys' fees. *Perreira v. HHS*, 27 Fed. Cl. 29, 34 (1992). Moreover, the Vaccine Guidelines advise that expert retention is typically not warranted in expedited SPU cases such as the instant one. Petitioners' counsel are warned that failure to confer with the court prior to engaging experts in SPU case may affect reimbursement of those costs. *See* Vaccine Guidelines, §5, Ch. 3.

| | |
|---|---|
| Total Fees: | $12,365.80 |
| Costs: | + $455.46 |
| **Final Fees and Costs Awarded:** | **$12,821.26** |

Sutin, Thayer & Browne:

| | |
|---|---|
| Original Request for Fees: | $16,036.50 |
| Rate Reduction Above: | -$817.50 |
| Hour Reduction Above: | -$3,633.50 |
| Adjusted Gross Receipts Tax: | +$832.71 |
| Total Fees: | $12,418.21 |
| | |
| Original Costs Requested: | $1,542.56 |
| Cost Reduction Above: | -$277.00 |
| Total Costs: | $1,265.56 |
| **Final Fees and Costs Awarded:** | **$13,683.77** |

Will Ferguson & Associates:

| | |
|---|---|
| Original Request for Fees: | $25,050.00 |
| Rate Reduction Above: | -$1,670.00 |
| Hour Reduction Above: | -$4,200.00 |
| Adjusted Gross Receipts Tax: | +$1,378.56 |
| Total Fees: | $20,558.56 |
| | |
| Costs: | +$7,901.43 |
| **Final Fees and Costs Awarded:** | **$28,459.99** |

**Accordingly, the undersigned awards the total of $54,965.02[10] as follows:**

- **A lump sum of $12,821.26 in the form of a check jointly payable to petitioner and petitioner's counsel Maglio Christopher & Toale, PA; and**

---

[10] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

- **A lump sum of $13,683.77 in the form of a check jointly payable to petitioner and petitioner's counsel Sutin Thayer & Browne; and**

- **A lump sum of $28,459.99 in the form of a check jointly payable to petitioner and petitioner's counsel Will Ferguson & Associates.**

The clerk of the court shall enter judgment in accordance herewith.[11]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.